UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 13-03-GFVT |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DELBERT COUCH, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court upon Magistrate Judge Hanly A. Ingram's recommended disposition [R. 30] of the motions to suppress evidence [R. 14] and statements [R. 15] filed by Delbert Couch. The Magistrate Judge recommends that the Court deny in part Couch's motion to suppress evidence and deny the motion to suppress statements. Couch objects to the recommendation. [R. 31.] This objection triggers this Court's obligation to conduct a *de novo* review on all issues raised in Couch's objection. *See* 28 U.S.C. § 636(b)(1)(c). The Court has satisfied that duty, reviewing the entire record, including the parties' arguments, relevant case law and statutory authority, as well as applicable procedural rules. For the reasons set forth below, Couch's objections to the Magistrate Judge's recommended disposition are OVERRULED.

I

The Magistrate Judge conducted an evidentiary hearing on the issues of Couch's motion [R. 30] and accurately sets out the factual and procedural background of the case

in his recommended disposition. [R. 59 at 1-3]. Couch contests the Magistrate Judge's legal conclusions but does not object to his recitation of the facts. Therefore, the Court incorporates his discussion of the record into this order. A summarized recitation of the those facts follow:

> Kentucky State Trooper Jesse Armstrong, along with other members of the Governor's Marijuana Eradication Detail, conducted a knock and talk at the residence of Defendant Couch. D.E. 25 (Transcript) at 8… Trooper Armstrong asked Defendant for consent to search his residence, which Defendant refused. *Id.* at 13. Trooper Armstrong noted the scent of smoked marijuana coming from Defendant's residence. *Id.*… [Officers walked around the Defendants house and found some Marijuana plants growing in proximity to the Defendants property.]… After viewing these plants, Trooper Lunsford began working on a search warrant application. Trooper Armstrong informed Defendant that they saw a plant, and Defendant again refused to give consent to search his home without a warrant. *Id.* at 21. Because they were working to secure a search warrant, the officers asked Defendant to stay outside of his home, and due to the heat, the officers "pulled a chair into the shade and let him sit there" while waiting for the warrant. *Id.* Defendant was not handcuffed or placed under arrest at that time. *Id.* at 23.
>
> During this time, Trooper Armstrong asked Defendant whether he used marijuana, and Defendant responded in the affirmative. *Id.* at 24. Trooper Armstrong also asked questions about Defendant's job and the trailers located "adjacent to the residence." *Id.* At some point, Defendant alerted the officers to a heart condition, and Defendant received a bottle of water and was escorted into his home to obtain his medicine. *Id.* at 25. Defendant then received a second bottle of water, and the officers called an ambulance to further evaluate his health. *Id.* Per the ambulance service, Defendant was a "little dehydrated," but he did not have to leave the residence with the medical personnel. *Id.* Ultimately, the officers "let [Defendant] sit in a vehicle that was running with the air on so he could cool down." *Id.* at 26.
>
> Approximately two hours later, the officers returned with a search warrant authorizing a search of Defendant's residence, property, and vehicle. *Id.* at 26; D.E. 14-2 (Search Warrant)…. A search of the residence, the adjacent trailers, Defendant's property, and the forested area behind Defendant's property uncovered nineteen marijuana plants, 168 grams of processed marijuana, nine firearms, various calibers of ammunition, a set of scales, two boxes of sandwich bags, a baggie with marijuana residue, various bottles and baggies containing marijuana seeds, and three coffee cans containing $81,074 in cash. D.E. 14-2 (Search Warrant) at 2.

[R. 30 at 2-5.] Couch filed motions seeking to suppress evidence [14] and statements [15]. The Magistrate Judge issued his recommended disposition [R. 30] on June 28, 2013 and Couch objected [R. 31], triggering this review.

## II

### A

#### 1

Couch first objects to the Magistrate Judge's finding that evidence seized from his home should not be suppressed because the executing officers were operating in good faith. [R. 31 at 2.] The Court's analysis necessarily begins with the Fourth Amendment. It provides that "the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated and no warrants shall issue but upon probable cause, supported by Oath or affirmation, and particularity describing the place to be searched and persons or things to be seized." U.S. Const. Amend. IV. These words "draw a firm line at the entrance of the house," such that searches and seizures inside a residence without a warrant are "presumptively unreasonable." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1511 (6th Cir. 1988) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 474-75 (1971)).

The Supreme Court has recognized exceptions to this general warrant requirement. Most prominently, the good faith exception, as espoused in *U.S. v. Leon,* 468 U.S. 897, 918-921 (1984). This exception provides that "the exclusionary rule should not bar the government's introduction of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently invalidated." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*,

468 U.S. at 918-921. The Supreme Court has articulated four circumstances, however, where the good faith exception does not apply:

> (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid.

*Id*. (citing *Leon*, 468 U.S. at 914–923).

Couch argues the scales and coffee cans containing cash were improperly seized. First, he argues that the warrant's language ("any items associated with the possession, cultivation or trafficking in marijuana") delegates absolute discretion about what to seize to the executing officers and is so vague that it constitutes a general warrant. [R. 31 at 4.] He argues this generality is insufficient in the context of the Fourth Amendment's particularity requirement and renders the entire search impermissible. He contends that the Magistrate Judge did not address this issue.[1] [R. 31 at 4.] Second, Couch argues that circumstances three and four from *Leon* apply and should prevent the application of the good faith exception. 468 U.S. at 914–923.

In the recommended disposition, the Magistrate Judge found that the "triple beam scales and the three coffee cans containing $81,074 in cash were not properly seized" because "the warrant only contained probable cause to search for items related to the possession or cultivation of marijuana." [R. 30 at 25.] The scales and cans of money were arguably connected to drug trafficking but the Magistrate Judge found that since the search warrant's reference to *trafficking* was not supported by probable cause and the

---

[1] The Magistrate Judge did explore the concept of "overbreadth" and, in this discussion, addressed many of Couch's particularity concerns. This court, however, reviews the issues *de novo* and the Magistrate Judge's conclusions bear no weight in this Court's determination.

4

scales and cash were not "immediately identifiable as incriminating" they were, therefore, inadmissible unless saved by the good faith exception. [Id.]

Ultimately, the Magistrate Judge concluded that the good faith exception does apply, precluding suppression of the scales and coffee cans of cash. [R. 30 at 26.] He explained that "while the warrant affidavit lacked probable cause as to trafficking, the warrant was not 'so lacking in indicia of probable cause' or 'so facially deficient' that the officers would have been unreasonable in relying on it to seize this evidence." [Id. at 26.] Couch argues that the Magistrate Judge's legal conclusion and application of the good faith exception are incompatible. He argues that because the Magistrate Judge concluded "the affidavit did not report any fact or even an inference to suggest trafficking" that neither the Judge who signed the warrant or the Trooper who obtained the warrant could have "had a good faith belief" that they "were authorized to search for evidence of trafficking in marijuana." [R. 31 at 5.] He contends the good faith exception cannot apply because the affidavit lacked indicia of probable cause, rendering it unreasonable, and that the warrant was so facially deficient that the officers could not have reasonably presumed it valid. [Id.]

**2**

Couch asserts that "the language of the search warrant was so vague as to constitute a 'general warrant.'" [R. 31 at 4.] He argues that the warrant's language ("any items associated with the possession, cultivation or trafficking in marijuana") delegates absolute discretion about what to seize to the executing officers. [R. 31 at 4.]

The Fourth Amendment provides that "no warrants shall issue but upon probable cause, supported by Oath or affirmation, and **particularly** describing the place to be

5

searched and persons or things to be seized." U.S. Const. Amend. IV (emphasis added). "General search warrants which fail to particularly describe the things to be searched for and seized 'create a danger of unlimited discretion in the executing officer's determination of what is subject to seizure and a danger that items will be seized when the warrant refers to other items.' " *United States v. Ables*, 167 F. 3d 1021, 1033 (6th Cir. 1999) (quoting *United States v. Savoca*, 761 F.2d 292, 298-299 (6th Cir. 1985)). This determination is case specific as "the degree of specificity required is flexible and will vary depending on the crime involved and the types of items sought. 'Thus, a description is valid if it is as specific as the circumstances and the nature of the activity under investigation permit.' " *United States v. Henson*, 848 F.2d 1374, 1383 (1988) (quoting *United States v. Blum,* 753 F.2d 999, 1001 (11th Cir. 1985)). "[A] search conducted pursuant to a warrant that fails to conform to the particularity requirement of the Fourth Amendment is unconstitutional." *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). The warrant at question in this case permitted the search and seizure of:

> All stolen or embezzled property, property or things used as committing a crime; property or things in possession of a person who intends to use it as a means of committing a crime; property or things in the possession of a person to whom it was delivered for the purpose of concealing it or preventing its discovery and which is intended to be used as a means of committing a crime; property or things consisting of evidence which tends to show a crime has been committed or a particular person has committed a crime. More particularly, any items associated with the possession, cultivation or trafficking in marijuana.

[R. 26, Exhibit 3.] The Magistrate Judge significantly limited the scope of this warrant in his recommended disposition on the grounds that much of the warrant was overly broad and not supported by probable cause. [R. 30 at 23.] Specifically, he excised the portions of the warrant that authorized the search and seizure of property constituting "stolen or

6

embezzled property," "anything delivered for the purpose of concealment to use as means of committing crime" and evidence suggesting the "trafficking" in marijuana. [Id.]

The remaining portions of the search warrant are not unconstitutional for lack of particularity. While there is an obvious preference that search warrants be specific, "[t]he use of a generic term or a general description is not per se violative of the fourth amendment." *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991) (citing *U.S. v. Cook*, 657 F.2d 730, 733 (5th Cir. 1981.)). In *Blakeney*, the generic use of the term "jewelry" in a search warrant, as opposed to specifically identifying known pieces of stolen jewelry, rendered the warrant overly broad. 942 F.2d at 1028. The case at hand is distinguishable. In *Blakeney*, the officers had an "inventory of the items taken" during the Jewelry Store robbery that was the basis for the search. In this case, the officers did not know exactly what items associated with the possession, cultivation and trafficking of marijuana were in Couch's home and were unable to include a more specific inventory in the affidavit and, ultimately, the search warrant. "When a more specific description of the items to be seized is unavailable, a general description will suffice." *Blakeney*, 942 F.2d at 1027 (quoting *Cook*, 657 F.2d at 733)). This description was "as specific as the circumstances and the nature of the activity under investigation [did] permit.' " *Henson*, 848 F.2d at 1374 (quoting *Blum,* 753 F.2d at 1001).

As previously established, parts of the warrant were overly broad and not supported by probable cause. These portions, however, were properly excised by the Magistrate Judge. This finding of overbreath "does not require suppression of all of the items seized pursuant to the warrant." *Blakeney,* 942 F.2d at 1027. When part of the warrant is overly broad, "the proper approach to this dilemma is to sever the infirm

7

portion of the search warrant from the remainder which passes constitutional muster."
*Blakeney,* 942 F.2d at 1027 (citing *Worthington v. United States*, 726 F.2d 1089, 1092 (6th Cir. 1984). By not permitting evidence seized pursuant to these overly broad portions, the defendant is not prejudiced by the warrant's defects. *Id*. This was the approach taken by the Magistrate Judge and is adopted here.

Second, Couch claims that the *Leon* good faith exception cannot apply because the "affidavit is 'so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable' and because 'the warrant is so facially deficient that the existing officers could not reasonably presume it to be valid.' " [R. 31 at 5, citing R. 30 at 26 (*Recommended Disposition*).] Advancing these two exceptions, which are often consolidated by courts into one, is essentially the same as arguing that the affidavit is bare bones.[2] *U.S. v. Laughton*, 409 F.3d 744 at 748 (2005). The only difference is that, "the standard by which an affidavit should be judged for purposes of the Leon good faith exception 'is a less demanding showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place.'" *Id*. (citing *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004)). Thus, if the affidavit is not considered bare bones in the context of a probable cause analysis, it would necessarily be sufficient under the less restrictive good faith analysis.

In *U.S. v. Laughton*, the officer's affidavit in support of a search warrant failed to indicate where the confidential informant's drug purchases had been made or to provide any context establishing when the purchases had happened. The Sixth Circuit

---

[2] Bare bones affidavits are those which merely, "states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding the veracity of, reliability, and basis of knowledge." *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) (citing *Aguilar v. Texas*, 378 U.S. 108, 111 (6th Cir. 1996)).

8

summarized the affidavit's shortcomings: "[t]he application simply listed the address of the premises to be searched, a summary of the deputy's professional experience and two acontextual allegations against Laughton." *Laughton*, 409 F.3d at 750. The Sixth Circuit concluded that "[n]o reasonable officer could have believed that the affidavit was not so lacking in indicia of probable cause as to be reliable" because no nexus was established between the residence and the criminal activity. *Id.* The facts presented in this case present a different circumstance than those in *Laughton* as the contested warrant did establish a nexus between the residence and the criminal activity. The affidavit explains that the officers responded to the address after spotting marijuana behind the residence during an aerial sweep. [R. 14-1 (*Affidavit*).] Once they arrived to confirm their aerial spot, they spoke to Couch who stated he "may have less than one pound [of marijuana] in the residence" and they smelled marijuana. [Id.] These facts support a determination that contraband or evidence was in the residence. As such, the affidavit cannot be said to be bare bones and insufficient to justify the probable cause determination. The affidavit is not conclusory and provided useful, non boiler-plate facts upon which the magistrate could base his determination.

Finally, it is worth directly addressing Couch's argument that the Magistrate Judge's conclusion that "the affidavit did not report any fact or even an inference to suggest trafficking" precluded application of the good faith exception because of the Judge and Trooper's role in preparing and approving the warrant. As has already been addressed, the warrant was not bare bones or so lacking in support to render the whole warrant invalid. Second, the point of the *Leon* good faith exception is that evidence gathered by police officers depending on the independent probable cause determination

9

of a judge will not be punished for subsequently invalidated warrants. The suppression would serve no deterrent purpose. In many circumstances the Trooper is responsible for preparing the affidavit that supports the warrant and also executing the search. There is no reason to believe, nor has any suggestion been made that the judge and trooper were colluding. The trooper relied on the independent determination of the judge and the subsequent determination that portions of the warrant are invalid does not change the officer's good faith dependence on that document – this is the situation that *Leon* is designed to address. Therefore, Couch's objections to the Magistrate Judge's recommended disposition regarding suppression of evidence are overruled.

**B**

**1**

Couch next objects to the Magistrate Judge's conclusion that his statements during his "interrogation by Trooper Armstrong are admissible because…Couch was not 'in custody' at the time of the interrogation." [R. 31.]

The starting point of this analysis is the Fifth Amendment to the Constitution which states that "[n]o person…shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. In *Miranda v. Arizona*, the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). Specifically, *Miranda* held that "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized."

10

*Id.* at 478-79. Thus, the Miranda court recognized that a "suspect under custodial interrogation must be given notice of his Fifth Amendment right against self-incrimination." *United States v. Malcom*, 435 F. App'x 417, 420 (6th Cir. 2011) (citing *Miranda*, 384 U.S. at 478-79).

The Supreme Court has defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Thompson v. Keohane*, 516 U.S. 99, 107 (1995) (citing *Miranda,* 384 U.S. at 444). This inquiry is traditionally divided into two distinct prongs.

First, a person is in custody for purposes of *Miranda*, when "there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (citing *Oregon v. Mathiason,* 429 U.S. 492 (1977)). However, "[n]ot all restraints on freedom of movement amount to custody for purposes of *Miranda*." *Howes v. Fields*, 132 S.Ct. 1181, 1189-90 (2012). The Supreme Court has " 'decline[d] to accord talismanic power' to the freedom-of-movement inquiry and have instead asked the additional question whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda."* *Fields*, 132 S.Ct. at 1189-90 (2012) (citing *Berkemer v. McCarty,* 468 U.S. 420, 437 (1984)). The custody determination "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Stansbury v. California,* 511 U.S. 318 (1994) (per curiam).

Second, *Miranda* defined interrogation as "questioning initiated by law enforcement officers" after the suspect had been taken into custody. 384 U.S. at 444. This definition was expanded by the Supreme Court in *Rhode Island v. Innis,* when the Court established that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." 446 U.S. 291, 301 (1980). When statements are made in contravention of the above rules then the statements will be excluded from admission at trial.

In the case at hand, the Magistrate Judge found that an interrogation did take place on the grounds that "Trooper Armstrong should have known that his question regarding personal marijuana use was reasonably likely to elicit an incriminating response." [R. 30 at 28.] This issue is not in dispute. The Magistrate Judge went on to find that the statement need not be suppressed, however, as Couch was not in custody at the time of the interrogation. [Id.] He concluded that the circumstances amounted to "a temporary detention while awaiting a search warrant as permitted under *Illinois v. McArthur*, 531 U.S. 326 (2001), rather than a restraint on Defendant's movement consistent with a formal arrest." [Id. at 29.]

**2**

Couch argues that neither *Illinois v. McArthur*, the case relied upon by the Magistrate Judge, or *Michigan v. Summers,* the case relied on by the United States, are on point. [R. 31 at 6.] In *Michigan v. Summers,* 452 U.S. 692 (1981) the Supreme Court held that "a warrant to search for contraband founded on probable cause implicitly carries

with it the limited authority to detain the occupants of the premises while a proper search is conducted." The defendant in *Summers* was detained while his home was being searched. The Supreme Court explained that "[o]f prime importance in assessing the intrusion is the fact that the police had obtained a warrant to search respondent's house for contraband." *Id*. at 701. Couch correctly distinguishes his situation from that presented in *Summers* on the grounds that he was detained while waiting for a search warrant to be issued.

In *Illinois v. McArthur,* 531 U.S. 326 (2001), the Court held that police acted reasonably in denying a man entry into his trailer for the two hours that it took them to obtain a search warrant. The Court reasoned the police had probable cause and good reason to believe that the man would destroy the evidence if permitted entry to his trailer. *Id*. at 332. The Court further explained that police had reasonably balanced the need to search the property with the man's right of privacy and, finally, the warrantless seizure was limited to a reasonable period of time (two hours) while police retrieved a warrant. *Id*. Couch distinguishes this case on the grounds that the defendant in *McArthur* was merely restricted from entering his home while the search warrant was obtained. [R. 31 at 6.] Couch argues that he was not merely prevented from entering his home but that he was actually in custody.

Couch argues that neither of the above mentioned cases authorize his detention and that the only "relevant inquiry" is how a reasonable man in his position would have felt in the situation. [Id. at 7, citing *Berkemer v. McCarty*, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the

13

suspect's position would have understood his situation.")]. This argument oversimplifies the issue and confuses, what the Court sees, as two separate inquiries. First, the Court must determine whether the police acted permissibly in denying Couch's entrance into his home. Second, the Court must determine if Couch was in custody for purposes of *Miranda* when he was outside his home.

The Magistrate Judge was correct in holding that *Illinois v. McArthur* gave police the right to prevent Couch from re-entering his home while they waited on a warrant. In very similar circumstances to those presented in *McArthur*, Couch was denied re-entry into his house, without an officer escort, while the officers waited for a search warrant. Evaluating the situation in terms of the *McArthur* factors shows the Officer's actions were reasonable. Officers had probable cause to believe that there was evidence inside the home. It was reasonable to believe that Couch would attempt to hide or destroy the evidence if he were let to enter the house alone. The police neither searched the home or arrested Couch before receiving the warrant. As in McArthur, they "imposed a significantly less restrictive restraint" by preventing Couch from entering the trailer without a police escort. Finally, the restraint was only two hours long. *McArthur,* 531 U.S. at 332. The police acted reasonably in denying his re-entry to the home while waiting for the warrant. Nowhere, however, in *McArthur*, did the police place the defendant into custody. Rather, the officers prevented "McArthur only from entering the trailer unaccompanied." *Id*. at 332. For this reason, it is necessary to continue the analysis one step further and address whether Couch was in custody while waiting for the warrant.

Couch's framing of the Miranda custody determination also oversimplifies the issue in light of the Supreme Court's holding in *Fields*, 132 S.Ct. at 1189-90. Correctly, Couch classifies the Court's first inquiry as whether, in light of the circumstances, a reasonable person would have felt free to leave. *Fields*, 132 S.Ct. 1181. In making this determination, the Supreme Court suggests considering the location and duration of the questioning, statements made during the interview, whether physical restraints were used and whether the subject was ultimately released at the conclusion of the interview. *Id*. (citations omitted). What Couch overlooks, however, is that the Court must also determine "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Id*. This further requirement recognizes that situations exist where a person is detained but not in *Miranda* custody because "such detention does not 'sufficiently impair [the detained person's] free exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights.' " *Fields*, 132 S.Ct. at 1189-90 (citing *Berkemer*, 468 U.S. at 442 (Police questioning of a motorist pulled over in a routine traffic stop was not custodial interrogation.))

Couch explains he was "removed from his home and told to sit in a chair." [R. 31 at 7.] This is a slightly disingenuous characterization. Couch was removed from his home and the officers "pulled a chair into the shade and let him sit there" while waiting for the warrant. [R. 25 at 21.] Couch was not handcuffed or placed under arrest at that time. [Id. at 23.] When Couch alerted the officers to a heart condition, they gave him a bottle of water and escorted him into his home to obtain medicine. [Id. at 25.] Ultimately, the officers let Couch "sit in a vehicle that was running with the air on so he

15

could cool down." [Id. at 26.] Couch cites testimony from the suppression hearing where Trooper Armstrong states that Couch "would have been further detained until the investigation was completed" if he had attempted to leave. [R. 31. At 7, citing D.E. 25 at 45]. While this might seem to support Couch's argument, it is actually unimportant. This hearing testimony presented the Trooper with a hypothetical situation that did not present itself during the time in question. Couch did not try to leave so Trooper Armstrong never prevented his egress. As Couch properly conveys, the appropriate inquiry is "how a reasonable man in the suspect's position would have understood his situation." *Berkemer*, 468 U.S. at 442.

Officers properly prevented Couch's entry into the home pursuant to *Illinois v. McArthur*. Once Couch was outside the home, a reasonable person would not have felt as if they could not leave. Furthermore, even if a reasonable person would have felt their movement was restrained, the additional question must be asked if "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*." *Fields*, 132 S.Ct. at 1189-90. This Court holds that it did not.

**III**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

1. The Defendants' Objections to the Magistrate's Report and Recommendation [R. 31] are **OVERRULED**;

2. The Magistrate Judge's Recommended Disposition [R. 30] is **ADOPTED** as and for the opinion of this Court;

3. The Defendant's Motions to Suppress Evidence [R. 14] is **GRANTED** in part and **DENIED** in part as is consistent with the Recommended Disposition [R. 30]; and,

4. The Defendant's Motion to Suppress Statements [R. 15] is **DENIED**.

This 20th Day of November, 2013.



Signed By:
*Gregory F. Van Tatenhove*
United States District Judge